Daniel P. Larsen, OSB No. 943645
dlarsen@buchalter.com
BUCHALTER, A Professional Corporation
805 SW Broadway Suite 1500
Portland, OR 97205
Telephone: 503.226.1191

R. Charles Henn Jr. (*pro hac vice* to be filed)
chenn@ktslaw.com
Charles H. Hooker III (*pro hac vice* to be filed)
chooker@ktslaw.com
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309
Telephone: 404.815.6500

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **ADIDAS AMERICA, INC.**, an Oregon corporation; and **ADIDAS AG**, a foreign entity, | Case No. |
| Plaintiffs, | **COMPLAINT** (Trademark Infringement, Trademark Counterfeiting, Unfair Competition, Trademark Dilution, and Trade Dress Infringement) |
| v. | |
| **HALL OF FAME SPORTS MEMORABILIA, Inc.**, a Delaware corporation, | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

Plaintiffs adidas America, Inc. and adidas AG (collectively, "adidas") state the following

for their Complaint against Defendant Hall of Fame Sports Memorabilia ("HOFSM").

1- COMPLAINT

## I.     INTRODUCTION

1.      adidas brings this action to stop HOFSM's deliberate efforts to imitate and infringe adidas's famous and distinctive Three-Stripe trademark (the "Three-Stripe Mark") and its famous, nonfunctional, and distinctive trade dress in the Real Madrid and Argentina soccer jersey designs. HOFSM willfully is knocking off and infringing the Three-Stripe Mark and the Real Madrid and Argentina soccer jerseys' trade dress by selling copies of these jerseys bearing imitations of the Three-Stripe Mark and featuring the names and jersey numbers of famous players whom adidas sponsors—all to adidas's irreparable harm.

2.      For decades, adidas has manufactured, advertised, marketed, promoted, distributed, and sold footwear and apparel bearing its famous and distinctive Three-Stripe Mark, which is covered by numerous incontestable federal trademark registrations. Consumers readily recognize adidas's Three-Stripe Mark and uniquely associate it with adidas. And federal courts repeatedly have held that adidas's Three-Stripe Mark is famous.

3.      adidas's use of the Three-Stripe Mark is especially well known and longstanding in connection with soccer apparel, footwear, and products. For decades, adidas has sponsored the men's and women's FIFA World Cup tournaments, where the Three-Stripe Mark is prominently displayed and where adidas has supplied the official ball for more than 50 years. adidas also has sponsored the world's top soccer clubs such as Real Madrid CF, Manchester United, Arsenal, FC Bayern Munich, and Juventus, as well as top Federations such as Argentina (AFA), Belgium (RBFA), Germany (DFB), Italy (FIGC), Japan (JFA), and Spain (RFEF). In the United States, adidas sponsors Major League Soccer (MLS) and uses the Three-Stripe Mark extensively in connection with MLS apparel and merchandise. And in the United States and throughout the world, adidas and its Three-Stripe Mark are closely associated with the soccer superstars it

2-  COMPLAINT

sponsors, including Lionel Messi, Jude Bellingham, Mohamed Salah, David Beckham, and Paul Pogba.

      4.     In addition to its Three-Stripe Mark, adidas owns strong trade dress rights in the design of the Real Madrid and Argentina national soccer team jerseys—particularly when those designs are used in connection with the names and jersey numbers of legendary soccer players who play for those teams and whom adidas sponsors.

      5.     The Real Madrid jersey trade dress at issue is comprised of: (a) a white soccer jersey, (b) featuring the Three-Stripe Mark in gold or black extending from the collar across each shoulder, (c) the player name printed horizontally in black on the back of the jersey below the collar, (d) the jersey number below the player name, and (e) trademarks from adidas, Real Madrid CF, and the club's sponsor printed on the chest[1] (collectively, the "Real Madrid Jersey Trade Dress"). Examples are shown below.

 

---

[1] Although the club crest and sponsor's logo are components of the composite trade dress, they are separately owned by third parties.







6.      The Argentina jersey trade dress at issue is comprised of: (a) a white jersey, (b) three light blue stripes running vertically on the front of the jersey, (c) and adidas trademark and the Argentine Football Association (AFA) crest on the chest,[2] (d) four light blue vertical stripes appearing on the back of the jersey with two middle stripes that are thinner than the two outer stripes, (e) the Three-Stripe Mark in black extending from the collar across each shoulder, (f) the player name printed in black horizontally on the back of the jersey below the collar, and (g) the jersey number printed in black below the player name (collectively, the "Argentina Jersey Trade Dress"). An example of this trade dress is shown below.

---

[2] While the club crest is a component of the composite trade dress, it is owned by a third party.




7.      adidas owns the Argentina Jersey Trade Dress and the Real Madrid Jersey Trade Dress.

8.      Well after adidas's Three-Stripe Mark, Real Madrid Jersey Trade Dress, and Argentina Jersey Trade Dress became distinctive, famous, and had been used extensively in commerce in connection with adidas's sponsorships of Real Madrid and the Argentina national teams, HOFSM began offering for sale knock-off Real Madrid and Argentina national team soccer jerseys bearing identical, confusingly similar, and/or substantially indistinguishable imitations of the Three-Stripe Mark, the Real Madrid Jersey Trade Dress, and the Argentina Jersey Trade Dress—without authorization from adidas (the "Infringing Apparel"). Examples of the Infringing Apparel offered for sale by HOFSM appear below and on the following pages:

















9.      HOFSM's infringement is a deliberate and willful effort to associate its products

with adidas by copying or imitating the Three-Stripe Mark, the Real Madrid Jersey Trade Dress,

and the Argentina Jersey Trade Dress. HOFSM's misleading practices and misappropriation of

7-  COMPLAINT

adidas's famous Three-Stripe Mark and trade dress are likely to cause consumer confusion and deceive the public regarding the Infringing Apparel's source, sponsorship, or affiliation, by featuring a spurious mark, trade dress, and designs that are identical with, confusingly similar to, or substantially indistinguishable from, adidas's Three-Stripe Mark and trade dress in connection with the promotion and sale and distribution of apparel that is identical with, confusingly similar to, or substantially indistinguishable from soccer jerseys for which adidas is well known for making and selling.

10.     Because HOFSM's actions are irreparably harming adidas's brand, its extremely valuable Three-Stripe Mark and the well-known Real Madrid Jersey Trade Dress and Argentina Jersey Trade Dress, adidas brings this action at law and in equity for trademark infringement, counterfeiting, dilution, unfair competition, and trade dress infringement arising under: the laws of Oregon; the Trademark Act of 1946, 15 U.S.C. §§ 1051 *et seq.* (the "Lanham Act"); the fair business practices and unfair and deceptive trade practices acts of several states; and the common law. Among other relief, adidas asks this Court to: (a) permanently enjoin HOFSM from distributing, marketing, or selling apparel using or bearing confusingly similar imitations of the Three-Stripe Mark; (b) permanently enjoin HOFSM from distributing, marketing, or selling apparel using or bearing confusingly similar imitations of the Real Madrid Jersey Trade Dress or Argentina Jersey Trade Dress; (c) award adidas monetary damages and to treble that award; (d) award adidas statutory damages; (e) require HOFSM to disgorge all of its profits from its sale of the Infringing Apparel; and (f) award adidas punitive damages, attorneys' fees, and costs.

## II.    PARTIES

11.    Plaintiff adidas AG is a joint stock company organized and existing under the laws of the Federal Republic of Germany, having its office and principal place of business at Postach 11230, D-91072 Herzogenaurach, Federal Republic of Germany.

12.    Plaintiff adidas America, Inc. is a corporation organized and existing under the laws of the State of Oregon, having its principal place of business at 5055 N. Greeley Avenue, Portland, Oregon 97217. adidas America, Inc. directs all U.S.-based operations on behalf of adidas AG, including sales, brand marketing, product marketing, product design, public relations, distribution, enforcement, and licensing of and for ADIDAS-branded merchandise, including goods bearing the famous Three-Stripe Mark. adidas AG and adidas America, Inc., as well as any predecessors or related entities, are collectively referred to as "adidas."

13.    On information and belief, Defendant Hall of Fame Sports Memorabilia, Inc. is a corporation organized and existing under the laws of Delaware, having a principal place of business at 110 High Street, Mullica Hill, New Jersey 08062.

## III.    JURISDICTION AND VENUE

14.    This Court has subject matter jurisdiction under Section 39 of the Lanham Act, 15 U.S.C. § 1121, and 28 U.S.C. § 1338. Subject matter jurisdiction over adidas's related state and common law claims is proper pursuant to 28 U.S.C. §§ 1338 and 1367.

15.    This Court has personal jurisdiction over Defendant because, upon information and belief, (a) HOFSM has knowingly and purposefully marketed, distributed, offered for sale, and sold the Infringing Apparel to persons within the State of Oregon; (b) HOFSM regularly transacts and conducts business within the State of Oregon; and (c) HOFSM has otherwise made

9- COMPLAINT

or established contacts within the State of Oregon sufficient to permit the exercise of personal jurisdiction.

16.    Venue is proper in the District of Oregon pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the acts or omissions giving rise to adidas's claims occurred in this District.

## IV.    FACTS COMMON TO ALL CLAIMS FOR RELIEF

### A.    adidas's Famous Three-Stripe Mark

17.    adidas is currently, and for many years has been, one of the world's leading manufacturers of athletic apparel, sportswear, footwear, and sporting equipment. At least as early as 1952, adidas began using the Three-Stripe Mark on footwear sold in the United States. The Three-Stripe Mark, which is nonfunctional as applied to footwear, quickly came to signify the quality and reputation of adidas footwear. Representative examples of footwear bearing the Three-Stripe Mark are attached as **Exhibit 1**.

18.    At least as early as 1967, adidas began using its Three-Stripe Mark on apparel sold in the United States and worldwide. The Three-Stripe Mark, which also is nonfunctional as applied to apparel, quickly came to signify the quality and reputation of adidas apparel. Representative examples of apparel, including shirts, jackets, pants, and shorts, bearing the Three-Stripe Mark appear below and are attached as **Exhibit 2**.

19.    adidas has invested hundreds of millions of dollars building its brand in connection with the Three-Stripe Mark, and federal courts repeatedly have acknowledged that the Three-Stripe Mark is famous.

**B.      adidas's Use Of The Three-Stripe Mark On Soccer Apparel And Products**

20.      adidas has used the Three-Stripe Mark extensively across footwear and apparel for nearly every sport—including soccer, baseball, basketball, football, golf, running, and tennis—and the mark is indisputably famous and closely associated with adidas in connection with soccer footwear and apparel, and in particular in connection with soccer jerseys.

21.      For many years, adidas has sponsored the FIFA World Cup, which will take place in the United States in 2025. adidas also sponsors top soccer clubs across the world including Real Madrid, Manchester United, Arsenal, FC Bayern Munich, and Juventus, as well as top Federations such as Germany (DFB), Spain (RFEF), Belgium (RBFA), Argentina (AFA), Japan (JFA), and Italy (FIGC).

22.      In the United States, adidas sponsors the MLS and uses the Three-Stripe Mark extensively in connection with MLS apparel and merchandise. adidas and the Three-Stripe Mark are also closely associated with the soccer superstars it sponsors, including Lionel Messi, Jude Bellingham, Florian Wirtz, Mohamed Salah, Paul Pogba, David Beckham, Trinity Rodman, and Lindsey Horan.

23.      In connection with all of the teams, federations, and players adidas sponsors in professional soccer, adidas extensively markets and sells in the United States jerseys and apparel bearing the Three-Stripe Mark. Representative examples of such apparel appear on the following pages and in **Exhibit 3**.

11- COMPLAINT















**C.    adidas's Real Madrid And Argentina Jersey Trade Dress**

24.    adidas is a well-known sponsor of the world's top soccer associations, teams, and clubs, including the Real Madrid club team, the Argentine Football Association (AFA), and the Argentina national team. In connection with its sponsorships, adidas created the jerseys for these teams and, as a result (or through assignment), owns the intellectual property rights associated with them that are at issue in this action.

**1.    The Real Madrid Jersey Trade Dress**

25.    As part of its sponsorship of the Real Madrid team, adidas designed the official Real Madrid team jersey that is worn by the team's players in matches and is marketed to, and purchased by, the general consuming public throughout the world, including in retail stores throughout the United States on adidas's website (https://www.adidas.com/), in adidas stores, and in countless authorized third-party stores and websites.

26.    adidas owns not only its trademarks—including the Three-Stripe Mark—that appear on the Real Madrid jersey, but also the Real Madrid Jersey Trade Dress, which is distinctive, non-functional, and well known among the consuming public in the United States.

13- COMPLAINT

27. Among the consuming public in the United States, the Real Madrid Jersey Trade Dress signifies the source of Real Madrid Jerseys, and consumers associate the trade dress uniquely with adidas.

**2. The Argentina Jersey Trade Dress**

28. In connection with its sponsorship of the Argentina national soccer team, adidas created the official Argentina national team jersey that is worn by the team's players and is sold to the consuming public throughout the world, including in retail outlets throughout the United States, on adidas's website (https://www.adidas.com/), in adidas stores, and in countless authorized third-party stores and websites.

29. adidas owns its trademarks—including the Three-Stripe Mark—that appear on the Argentina national team jersey. adidas also owns the Argentina Jersey Trade Dress, which is distinctive, non-functional, and well known among the consuming public in the United States.

30. For decades, adidas has exclusively and extensively marketed and sold Argentina national soccer team jerseys in the United States, including advertising such jerseys in commercials, social media posts, print and digital advertising, and email campaigns. Among retail consumers in the United States, the Argentina Jersey Trade Dress signifies the source of Argentina national team jerseys, and consumers exclusively associate the trade dress with adidas.

**D.    adidas's Federal Trademark Registrations Covering The Three-Stripe Mark**

31. adidas is the owner of a federal trademark registration, Reg. No. 2,058,619, issued by the U.S. Patent and Trademark Office ("USPTO") on May 6, 1997 for the Three-Stripe Mark, as depicted below, for "sports and leisure wear, namely shirts."



Affidavits have been filed pursuant to Sections 8 and 15 of the Lanham Act, 15 U.S.C. §§ 1058 and 1065, and this registration is incontestable. A copy of the Certificate of Registration for this mark is attached as **Exhibit 4**.

      32.     adidas is the owner of a federal trademark registration, Reg. No. 3,029,127, issued by the USPTO on December 13, 2005, for the Three-Stripe Mark, as depicted below, for "[c]lothing, namely, T-shirts, sweatshirts, jackets and coats."



Affidavits have been filed pursuant to Sections 8 and 15 of the Lanham Act, 15 U.S.C. §§ 1058 and 1065, and this registration is incontestable. A copy of the Certificate of Registration for this mark is attached as **Exhibit 5**.

      33.     adidas is the owner of a federal trademark registration, Reg. No. 3,087,329, issued by the USPTO on May 2, 2006, for the Three-Stripe Mark, as depicted below, for "[c]lothing, namely, shirts, T-shirts, sweatshirts, vests, jackets and coats."



Affidavits have been filed pursuant to Sections 8 and 15 of the Lanham Act, 15 U.S.C. §§ 1058 and 1065, and this registration is incontestable. A copy of the Certificate of Registration for this mark is attached as **Exhibit 6**.

34.    adidas is the owner of a federal trademark registration, Reg. No. 4,910,643, issued by the USPTO on March 8, 2016, for the Three-Stripe Mark, as depicted below, for "Clothing, namely, shirts, T-shirts, sweatshirts, jerseys, pullovers, [and] tops," among other goods.



Affidavits have been filed pursuant to Sections 8 and 15 of the Lanham Act, 15 U.S.C. §§ 1058 and 1065, and this registration is incontestable. A copy of the Certificate of Registration for this mark is attached as **Exhibit 7**.

35.    adidas is the owner of additional incontestable federal registrations for the Three-Stripe Mark covering other items of apparel, including shirts, jackets, coats, vests, shorts, pants, and headwear, including Reg Nos. 870,136, 961,353, 2,016,963, 2,058,619, 2,278,591, 2,284,308 3,087,329, 3,183,656, 3,183,663, and 3,236,505. Copies of these Certificates of Registration are attached collectively as **Exhibit 8**.

16- COMPLAINT

36.     adidas is also the owner of incontestable federal registrations for the Three-Stripe Mark covering footwear, including Reg Nos. 1,815,956, 1,833,868, 2,278,589, 2,909,861, 2,999,646, 3,029,129, and 3,029,135. Copies of these Certificates of Registration are attached collectively as **Exhibit 9**.

37.     Additionally, adidas owns federal trademark registrations for the word marks THE BRAND WITH THE 3 STRIPES and THREE STRIPE LIFE, Reg. Nos. 1,674,229 and 6,897,937, respectively (issued by the USPTO on February 4, 1992 and November 15, 2022 respectively for various items of apparel and accessories). Affidavits have been filed for Reg. No. 1,674,229 pursuant to Sections 8 and 15 of the Lanham Act, 15 U.S.C. §§ 1058 and 1065, and this registration is incontestable. Copies of these Certificates of Registration are attached collectively as **Exhibit 10**.

### E.     adidas's Extensive Sales And Marketing Of Products Bearing The Three-Stripe Mark And The Real Madrid And Argentina Jerseys Trade Dress

38.     adidas's rights derive not only from its federal registrations, but also from the tremendous goodwill adidas has created in the Three-Stripe Mark and the Real Madrid and Argentina Jerseys Trade Dress through high volumes of sales and extensive marketing and advertising campaigns for years in the United States.

### 1.     Sales And Marketing Of Products Bearing The Three-Stripe Mark

39.     In recent years, annual sales of products bearing the Three-Stripe Mark have totaled in the billions of dollars globally and in the hundreds of millions of dollars within the United States.

40.     adidas has invested hundreds of millions of dollars building its brand in connection with the Three-Stripe Mark, and federal courts repeatedly have stated that the Three-Stripe Mark is famous among consumers in the United States. Indeed, for well over half a century,

adidas has advertised and promoted the Three-Stripe Mark in the United States through virtually every marketing channel, including print, television, digital advertising, social media, influencer marketing, and sponsorships.

41.    Since introducing the Three-Stripe Mark, adidas has spent many millions of dollars promoting the mark and products bearing the mark in the United States. Beyond adidas's extensive promotion of the Three-Stripe Mark in connection with soccer jerseys, apparel, and products, adidas has used the Three-Stripe Mark in connection with its frequent sponsorship of professional athletes, athletic tournaments, sports organizations, and collegiate sports teams across virtually every sport. For example, adidas has had longstanding relationships with the University of Kansas, Indiana University, the University of Nebraska, the University of Louisville, Arizona State University, Mississippi State University, and the University of Miami, among many other colleges and universities. Numerous sponsored athletes also wear apparel and footwear bearing the Three-Stripe Mark, including: (a) soccer superstars Lionel Messi, Mohamed Salah, Trinity Rodman, and Lindsey Horan; (b) MLB all-stars J.D. Martinez, Julio Rodriguez, and Corey Seager; (c) professional golfers Xander Schauffele, and Ludvig Aberg; (d) NFL quarterback and three-time Super Bowl champion Patrick Mahomes; (e) NBA stars James Harden, Damian Lillard, Donovan Mitchell, and Anthony Edwards; and (f) top tennis players, including Stefanos Tsitsipas, Jessica Pegula, Alexander Zevrev, and Maria Sakkari. For decades, adidas has also sponsored the world-famous Boston Marathon, along with many other events, teams, clubs, and individuals.

42.    Beyond the sports world, adidas has used the Three-Stripe Mark extensively in connection with lifestyle, athleisure, and street wear products, and adidas frequently has sponsored television and movie stars, social media influencers, and musical artists, including 13-

time Grammy Award winning producer Pharrell Williams and world renowned reggaeton artist

Bad Bunny.

43.    adidas also frequently has sponsored music and lifestyle festivals and events,

including, for example, Wanderlust and Lollapalooza.

44.    The Three-Stripe Mark also is well known in the realm of high-end fashion. adidas's

collaborations with high-end fashion designer brands date back to at least 2002 when adidas

announced the first-of-its-kind collaboration with Japanese fashion designer Yohji Yamamoto called

"Y-3" (where "the 3 represents the three signature stripes of the [a]didas logo"). *See* **Exhibit 11**

("Think of Adidas, by Way of Porsche," *The New York Times*, February 28, 2008). "Y-3 was one of

the first to blend the worlds of high-fashion with sportswear—something we know all too well

today—and it continues to dominate this space." *See* **Exhibit 12** (Santiago, Elliot, "Looking Back at

20 Years of Y-3," *Hypebeast*, February 25, 2022; Silbert, Jake, "A Conceptual SS22 Collection

Marks Y-3's 20th Anniversary Year" *Highsnobiety*, January 26, 2022). Notably, Mr. Yamamoto was

initially interested in the collaboration because of his desire to use the Three-Stripe Mark. *See*

**Exhibit 13** (Spagnolo, Angelo, "Walking Backwards Into the Future: Analyzing 15 Years of Y-3,"

*Grailed*, February 19, 2018). The success of Y-3 eventually paved the way for adidas's collaboration

with fashion designer Stella McCartney, which began in 2004. *See* **Exhibit 14** (Zee, Michaela,

"What Stella McCartney Taught Us About Sustainability," *L'OFFICIEL*, September 13, 2022).

adidas has continued its frequent sponsorships and collaborations with iconic brands including:

a)    **Prada**, featuring a "quintessential [a]didas tracksuit . . . sleekly tailored with subtle

Prada twists: the track pants' side stripes run along the inseam, a typical coach's jacket is extended to

a knee-length coat." *See* **Exhibit 15** (Plumber, Todd, "Prada Teamed Up With Adidas on New

Collection of Recycled Clothing—and It's Available Now," *Robb Report*, January 13, 2022);

b)      **Gucci**, "merg[ing] Adidas and Gucci logos and popular motifs, namely Adidas' three-strip[e] design and its signature tracksuits." *See* **Exhibit 16** (Ilchi, Layla, "Everything to Know About the Adidas x Gucci Collection," *Women's Wear Daily*, June 7, 2022);

c)      **Balenciaga**, incorporating "Three Stripes branding both in the literal sense and through a co-branded Trefoil & Balenciaga logo." *See* **Exhibit 17** (Vlahos, Nicholas, "The Full Balenciaga x adidas Collection Drops On November 3rd," *Sole Retriever*, November 2, 2022);

d)      **Edison Chen**, Clot founder and fashion designer, recently introduced the Clot x Neighborhood x adidas Superstar shoe featuring the "signature three stripes . . . stitched into the material in a zig-zag pattern." *See* **Exhibit 18** (Torres, Luis, "Clot Founder Edison Chen, Adidas Originals Announce Global Partnership," *Nice Kicks*, October 13, 2023);

e)      **Fear of God**, a prominent streetwear label, teamed up with adidas for a collaboration that combines "distinctive aesthetics and the iconic Three Stripes" to create Fear of God Athletics. *See* **Exhibit 19** (Briguglio, Mario, "ADIDAS X FEAR OF GOD ATHLETICS DELIVERY 1 RELEASES DECEMBER 2023," *Sneaker Bar Detroit*, November 29, 2023); and

f)      **Wales Bonner**, a British fashion brand known for its fusion of cultural influences, recently collaborated with adidas to construct an adidas Samba collection that "feature[s] metallic studs illuminating the iconic Three Stripes." *See* **Exhibit 20** (Briguglio, Mario, "WALES BONNER'S ADIDAS SAMBA 'STUDDED' PACK LIMITED TO 750 PAIRS EACH," *Sneaker Bar Detroit*, February 9, 2024).

45.      Unsolicited media coverage has referred to adidas's "classic three stripes" (Hondorp, Gabrielle, "The Best Tracksuits of 2024: Top Picks for Style, Speed and Comfort," *Sports Illustrated*, January 4, 2024), adidas as the "[b]rand with the Three Stripes" (Hernanadez, Jovani "Three Stripes Across 50 States: A Guide To The Best-Selling adidas Shoes In The U.S.,"

*Sneaker News*, November 15, 2023), adidas's "distinctive three-stripe pattern" (Gupta, Manjari, "5 sneaker models that define Adidas heritage," *Sportskeeda*, May 29, 2023), the "beloved Three Stripes icons" (Le, Michael, "The adidas PUFFYLETTE Creates An Illusory Homage To Iconic Three Stripes Sneakers," *Sneaker News*, December 8, 2022), adidas's "seminal three-stripes style" (Sandoval, Paolo, "From Samba to Superstar: Which Adidas Sneakers Are Right for You?," *Inside Hook,* October 19, 2022), "[t]hink of [a]didas and you think of the Three Stripes" (White, Mark, "Adidas: The history of the Three Stripes on football shirts," *FourFourTwo*, July 15, 2022), adidas's "signature three stripes" (Z., Yna, "Bringing the Lego 10282 Adidas Originals Superstar to life,"*AsiaOne*, July 14, 2021), "the iconic three-stripe [a]didas tag" (Romano, Brittany, "Adidas has finally made a golf shoe version of the popular three-striped Superstar sneaker," *Golf Digest*, August 13, 2020), adidas's "signature three-stripes" (Northman, Tora, "Adidas Originals' Burgundy Track Pants Are the Perfect Retro Staple," *Hypebae*, February 6, 2018), adidas's "signature three stripes" (Butler-Young, Sheena, "The Inside Scoop on How Adidas Became One of the Industry's Most Sought-After Brands," *Footwear News*, March 14, 2017), "iconic three stripes" (Reimel, Erin, "Alexander Wang Announced a Major Collab With Adidas at Fashion Week," *Glamour*, September 11, 2016), "famous Three Stripes" (Schwartz, Rob, "Three Brands That Won At The World Cup," *Forbes*, July 13, 2014). Copies of the foregoing and other unsolicited media articles discussing the adidas brand and the Three-Stripe Mark are attached collectively as **Exhibit 21**.

46.    In addition, adidas's advertising campaigns and sponsorships have themselves received extensive media coverage. For example:

        •    adidas's 2024 "You Got This" campaign features professional and amateur athletes—including Patrick Mahomes, Trinity Rodman, Lionel Messi, Linda Caicedo,

Rohit Sharma, Anthony Edwards, Jude Bellingham and the New Zealand All Blacks rugby team—to address how pressure detracts from their enjoyment of playing a sport. *See* **Exhibit 22** ("Adidas tells athletes of all types: 'You got this,'" *MarketingDive*, February 12, 2024).

- In 2023, adidas launched a series of short films accompanied by a set of triptych stills shot by Chadwick Tyler, with some sets featuring partners, collaborators, and friends of the brand that have helped to tell the story of the Trefoil the world over including: Zinedine Zidane, Jenna Ortega, Pusha T, Anitta, Hoyeon Jung, David Beckham, Jennie, Stormzy. *See* **Exhibit 23** ("Adidas Originals Launches New Global Brand Platform: 'We Gave The World An Original. You Gave Us A Thousand Back,'" *adidas News*, September 15, 2023).

- In 2022, adidas launched a campaign in connection with the 2022 FIFA World Cup called "When Football Is Everything, Impossible is Nothing," which featured icons from across sports and media such as Lionel Messi, Karim Benzema, Achraf Hakimi, Son Heung-Min, Jude Bellingham, Pedro 'Pedri' González López, Serge Gnabry and Stormzy. *See* **Exhibit 24** ("When Football Is Everything Impossible Is Nothing," *adidas News*, November 14, 2022).

- adidas's 2021 "Impossible is Nothing" campaign is a documentary-style work that extensively features the adidas trademarks, including the Three-Stripe Mark, throughout on apparel and footwear and is inclusive of people from different sports, genders, ethnicities, and nationalities, including Siya Kolisi, the first Black captain of the South African rugby team, Tiffany Abreu, the first trans woman to play in Brazilian Volleyball Superliga, Cyrill Gutsch, the award-winning designer and brand/product developer of Parley, Ranveer Singh, awarding-winning Hindi film actor, Mohamed Salah Hamed Mahrous Ghaly, Egyptian professional footballer for Liverpool and captain of the Egypt national team, and numerous

WNBA superstars, including Candace Parker, Nneka Ogwumike, Layshia Clarendon, and Angel McCoughtry. *See* **Exhibit 25** ("Impossible Is Nothing: Inspiring The World To See Possibilities," *adidas News*, April 19, 2021).

> • In 2020, adidas kicked off a campaign "Change Is a Team Sport," directed by and starring Jonah Hill, which emphasizes the power of teamwork and includes other icons such as K-pop's super girl group BLACKPINK, chart-topping producer-singer Pharrell Williams, Brazil's leading diva Anitta, Hong Kong-born singer-rapper Jackson Wang, DJ Kerwin Frost, Japanese fashion designer Nigo, professional gamer Ninja, American actress Yara Shahidi, and French soccer player Paul Pogba. *See* **Exhibit 26** ("Change Is A Team Sport," *adidas News*, January 26, 2020).

> • In 2019, adidas recruited tennis star Billie Jean King and ESPN host Maria Taylor to "promote visibility of women in sport" with its "She Breaks Barriers" campaign. This advertisement also "features athletes Rahaf Khatib, Keni Harrison, Becky Sauerbrunn, and Layshia Clarendon." *See* **Exhibit 27** (Smith, Jordan, "Adidas Launches Campaign for Equal Media Representation in Sport," *Runner's World*, March 12, 2019).

47.    adidas has built up and now owns extremely valuable goodwill that is symbolized by the Three-Stripe Mark. As a result of adidas's widespread, continuous, and exclusive use of the Three-Stripe Mark in connection with its apparel and footwear for many decades, the general consuming public of the United States recognizes the Three-Stripe Mark as a designation of source of the goods of adidas and it is, therefore, a famous mark. The Three-Stripe Mark became famous long before HOFSM began selling the Infringing Apparel.

2.     **Sales And Marketing Of Products Bearing The Real Madrid And Argentina Jerseys Trade Dress**

48.     adidas also has built up and now owns extremely valuable goodwill that is symbolized by the Real Madrid and Argentina Jersey Trade Dress.

49.     adidas has spent millions of dollars promoting the Real Madrid  and Argentina Jerseys Trade Dress, and it has sold millions of jerseys featuring each trade dress worldwide and in the United States.

50.     The Real Madrid Trade Dress and the Argentina Jersey Trade Dress are widely associated with adidas and are immensely popular among American soccer fans and consumers. For example, unsolicited media coverage has noted the Argentina Jersey Trade Dress's "classic design . . . with typical stripes that have become so iconic." *See* **Exhibit 28** ("Argentina World Cup shirt sold-out worldwide," *Diario AS*, December 21, 2022). The decades-long connection between adidas and the Argentina national team through the Argentina Jersey Trade Dress has been described as a "strong partnership, filled with a rich history." *See* **Exhibit 29** (Daniel Jones, "adidas & Argentina Celebrate 50 Years Of Association With Special Jersey," *SoccerBible*, November 15, 2024). Likewise, unsolicited media has highlighted adidas's Real Madrid Jersey Trade Dress as "connect[ing] fans and players of the club." *See* **Exhibit 30** ("adidas and Real Madrid unveil new home jersey for 2023/24 season," *thenewsmarket*, June 14, 2023).

51.     The fame and popularity of the Real Madrid Jersey Trade Dress is evidenced by unsolicited media coverage, including:

    a.    BeinSports forecasted record sales of adidas's Real Madrid Jersey Trade Dress for the 2024-25 season, describing the "minimalist design" that would be worn by soccer star Kylian Mbappé for the first time. *See* **Exhibit 31** ("Check Out the New Real Madrid Jersey Set to Be Worn by Mbappé" *BeinSports*, June 5, 2024).

24- COMPLAINT

b.   Real Total described the Real Madrid Jersey Trade Dress as having a "classic design" with the "famous Adidas stripes." *See* **Exhibit 32** (Nils Kern, "Simply Royal: Adidas and Real Madrid present new jersey" *Real Total*, June 5, 2024).

52.   Similarly, unsolicited media coverage illustrates the fame and popularity of the Argentina Jersey Trade Dress, including the following examples:

a.   In 2021, SoccerBible noted the "[n]ice touch" of a pattern overlayed on the Argentina Jersey Trade Dress that represented the regions of Argentina. *See* **Exhibit 33** (Daniel Jones, "adidas Launch Argentina 2021 Home Shirt," *SoccerBible*, March 22, 2021).

b.   The Argentina Jersey Trade Dress worn during the 2022 FIFA World Cup was described as the "classic sky blue and white stripes" and "traditional home look of sky blue and white vertical stripes." *See* **Exhibit 34** ("Adidas releases Argentina winners home shirt," *FourFourTwo*, December 22, 2022); **Exhibit 35** (Glenn Cook, "Argentina Unveils Home Kit for 2022 World Cup," *SportsLogos.Net*, July 8, 2022).

c.   Following Lionel Messi's first FIFA World Cup win with the Argentinian team, CNN reported that stock of both Messi's jersey and the team jersey—both examples of the Argentina Jersey Trade Dress—were sold out due to extraordinary demand. *See* **Exhibit 36** (Jordan Valinsky, "Lionel Messi's Argentina jerseys are sold out worldwide," *CNN*, December 19, 2022).

d.   After the 2022 World Cup win, USA Today reported that the "blue and white stripes . . . have become a symbol of hope and celebration." *See* **Exhibit 37** (Victoria Hernandez, "Lionel Messi Argentina jerseys sold out after World Cup victory," *USA Today*, December 19, 2022).

53.    As a result of adidas's extensive use and promotion of the Argentina Jersey Trade Dress Real Madrid Jersey Trade Dress, adidas has generated and owns valuable goodwill that is symbolized by each trade dress. The purchasing public has come to associate each trade dress with adidas, and each is distinctive and achieved significant secondary meaning among consumers in the United States long before HOFSM began its infringing conduct.

**F.    HOFSM's Unlawful Activities**

54.    On or around October 22, 2024, adidas became aware that HOFSM is manufacturing, producing, marketing, distributing, offering for sale, and selling in interstate commerce, apparel that bears identical, confusingly similar, and/or substantially indistinguishable imitations of adidas's famous Three-Stripe Mark, the Real Madrid Jersey Trade Dress, and the Argentina Jersey Trade Dress, without authorization from adidas, including these examples of the Infringing Apparel:

 








27- COMPLAINT

 

 

55.     The Infringing Apparel features designs that are identical to, or confusingly similar with, substantially indistinguishable from, likely to be confused with that mark, and/or likely to dilute adidas's famous Three-Stripe Mark. Worse, HOFSM's knock-off and counterfeit imitations of the Three-Stripe Mark appear on copies of soccer jerseys for teams and plays adidas sponsors— exacerbating the likelihood of confusion among consumers. As such, the Infringing Apparel also features designs that are confusingly similar to the Real Madrid Jersey Trade Dress and the Argentina Jersey Trade Dress.

56.     HOFSM knowingly and willfully uses its website, www.hofsm.com, to advertise, market, offer for sale, and sell the Infringing Apparel, examples of which are shown below and in **Exhibit 38**.

28- COMPLAINT



Shop    Categories    About us    Contact    (856) 535-7880

 

Home  /  Shop  /  Soccer  /  Facsimile Autographed Lionel Messi Leo Argentina White/Blue World Cup Reprint Laser Auto Soccer Jersey Size Men's XL



   

## Facsimile Autographed Lionel Messi Leo Argentina White/Blue World Cup Reprint Laser Auto Soccer Jersey Size Men's XL

**$74.99**

For sale is a facsimile autographed collectible jersey. The reprint facsimile autograph is an exact copy of the athlete's autograph, created by a laser with heat transfer vinyl. A facsimile autograph presents you with a great opportunity to proudly rep your favorite athlete without spending a small fortune for an authenticated autograph. The jersey has no brand names or logos. It is a custom jersey and was not manufactured by or in any manner associated with any professional sports league or manufacturer. This custom jersey carries no professional sports league or team designation. The item is a sports collectible. The custom jersey displays the name and number of the player along with an affixed reprinted facsimile autograph. Size is Men's XL. No other sizes are available.

1    

ADD TO WISHLIST

*Free shipping anywhere within the United States*

29- COMPLAINT



Shop    Categories    About us    Contact    (856) 535-7880

Home / Shop / Soccer / Facsimile Autographed Kylian Mbappe Real Madrid White Reprint Laser Auto Soccer Jersey Size Men's XL





## Facsimile Autographed Kylian Mbappe Real Madrid White Reprint Laser Auto Soccer Jersey Size Men's XL

### $74.99

For sale is a facsimile autographed collectible jersey. The reprint facsimile autograph is an exact copy of the athlete's autograph, created by a laser with heat transfer vinyl. A facsimile autograph presents you with a great opportunity to proudly rep your favorite athlete without spending a small fortune for an authenticated autograph. The jersey has no brand names or logos. It is a custom jersey and was not manufactured by or in any manner associated with any professional sports league or manufacturer. This custom jersey carries no professional sports league or team designation. The item is a sports collectible. The custom jersey displays the name and number of the player along with an affixed reprinted facsimile autograph. Size is Men's XL. No other sizes are available.

 

1

ADD TO CART

ADD TO WISHLIST

*Free shipping anywhere within the United States*

30- COMPLAINT



57.     HOFSM also knowingly and willfully uses its Amazon account to advertise, market, offer for sale, and sell the Infringing Apparel, examples of which are shown on the following pages and in **Exhibit 39**.

Collectibles & Fine Art › Sports › Clothing & Uniforms › Shirts



Roll over image to zoom in

### Facsimile Autographed Jude Bellingham Real Madrid White Reprint Laser Auto Soccer Jersey Size Men's XL

Brand: HOFSM.COM Hall of Fame Sports Memorabilia
1.0 ★☆☆☆☆ ∨ | 1 rating | Search this page

$74⁹⁹

FREE Returns ∨

| Authenticity Provided By | James Spence Authentication (JSA) |
|---|---|
| Grade Rating | GM (Gem Mint) |
| Autographed | No |
| Athlete Name | Jude Bellingham |
| Team | Real Madrid |

∨ See more

- Authentic detailing from the meticulously replicated autograph on handmade custom collectibles our jerseys boast impeccable attention to detail ensuring a true to life representation of your favorite sports icons
- Experience unmatched comfort and longevity whether you are cheering from the stands or hitting the streets as our jerseys are handcrafted from durable materials and have been built to withstand the rigors of both on and off field wear
- Display them proudly or wear them with pride these jerseys are a must have for any fan or sports enthusiast. Perfect for avid sports enthusiasts and collectors alike our facsimile autographed jerseys add a touch of prestige to any memorabilia collection



□ Add Prime to get **Fast, Free delivery**  prime

**Delivery** | Pickup

$74⁹⁹

FREE Returns ∨

FREE delivery **Thursday, December 12**

Or Prime members get FREE delivery **Saturday, December 7**. Order within **10 hrs 43 mins.**
Join Prime

⊙ Delivering to Warrenton 20186 - Update location

**In Stock**

Quantity: 1 ∨

**Add to Cart**

**Buy Now**

Ships from   Amazon
Sold by      Hall of Fame Sports Memorabilia
Returns      Returnable until Jan 31, 2025
Payment      Secure transaction

---

Collectibles & Fine Art › Sports › Clothing & Uniforms › Shirts



Roll over image to zoom in

### Facsimile Autographed Kylian Mbappe Real Madrid White Reprint Laser Auto Soccer Jersey Size Men's XL

Brand: HOFSM.COM Hall of Fame Sports Memorabilia
Search this page

$74⁹⁹

FREE Returns ∨

| Authenticity Provided By | James Spence Authentication (JSA) |
|---|---|
| Grade Rating | GM (Gem Mint) |
| Athlete Name | Kylian Mbappe |
| Team | Real Madrid |
| League | LaLiga |

∨ See more

- Authentic detailing from the meticulously replicated autograph on handmade custom collectibles our jerseys boast impeccable attention to detail ensuring a true to life representation of your favorite sports icons
- Experience unmatched comfort and longevity whether you are cheering from the stands or hitting the streets as our jerseys are handcrafted from durable materials and have been built to withstand the rigors of both on and off field wear
- Display them proudly or wear them with pride these jerseys are a must have for any fan or sports enthusiast. Perfect for avid sports enthusiasts and collectors alike our facsimile autographed jerseys add a touch of prestige to any memorabilia collection



□ Add Prime to get **Fast, Free delivery**  prime

**Delivery** | Pickup

$74⁹⁹

FREE Returns ∨

FREE delivery **Thursday, December 12**

Or fastest delivery **Tuesday, December 10**. Order within **10 hrs 38 mins**

⊙ Delivering to Warrenton 20186 - Update location

**In Stock**

Quantity: 1 ∨

**Add to Cart**

**Buy Now**

Ships from   Amazon
Sold by      Hall of Fame Sports Memorabilia
Returns      Returnable until Jan 31, 2025
Payment      Secure transaction



58.    Upon discovering the Infringing Apparel, adidas notified Amazon of HOFSM's infringement.

59.    On November 4, 2024, Amazon notified HOFSM of the removal of HOFSM's listings for the Infringing Apparel, on the basis that the listings violated Amazon's policies prohibiting intellectual property infringement.

33- COMPLAINT

60.     On November 5, 2024, counsel for HOFSM contacted adidas's representatives by email demanding that adidas "immediately contact Amazon and retract [the] complaints and refrain from filing any additional complaints against HOFSM." ("HOFSM's Response"). Counsel for HOFSM represented that its "products do not infringe [adidas's] trademark[s]" and that "filings of the alleged infringement/counterfeit complaint has caused and will continue to cause substantial damage to HOFSM's business and reputation." A copy of HOFSM's Response is attached as **Exhibit 40**.

61.     On or around November 8, 2024, adidas contacted Amazon to retract its complaint, but in doing so, did not waive any claims, or concede the legitimacy or authenticity of the Infringing Apparel.

62.     On information and belief, based on HOFSM's counsel's representations, Amazon reinstated the product pages for the Infringing Apparel on or around November 12, 2024, and HOFSM has continued to sell the Infringing Apparel following its reinstatement on Amazon.

63.     On information and belief, HOFSM has marketed, sold, and delivered Infringing Apparel to customer(s) in Oregon after Amazon reinstated the products.

64.     On information and belief, HOFSM has marketed, sold, and distributed Infringing Apparel from its website, www.hofsm.com, before, during, and after the time that adidas contacted Amazon about the Infringing Apparel. And HOFSM has continued to market, sell, and distribute the Infringing Apparel after it was notified that the apparel infringes, dilutes, and competes unfairly with adidas's rights.

65.     On information and belief, HOFSM knowingly, willfully, intentionally, and maliciously adopted and used identical, confusingly similar, and/or substantially

indistinguishable imitations of the Three-Stripe Mark, the Argentina Jersey Trade Dress, and the Real Madrid Jersey Trade Dress on the Infringing Apparel.

66.     The Infringing Apparel designed, manufactured, produced, distributed, marketed, promoted, offered for sale, and sold by HOFSM is not manufactured by adidas; nor is HOFSM associated, affiliated, or connected with adidas, or licensed, authorized, sponsored, endorsed, or approved by adidas in any way.

67.     adidas used its distinctive and famous Three-Stripe Mark, Real Madrid Jersey Trade Dress, and Argentina Jersey Trade Dress extensively and continuously long before HOFSM began distributing, marketing, promoting, offering for sale, or selling the Infringing Apparel.

68.     HOFSM's use of identical, confusingly similar, or substantially indistinguishable imitations of adidas's Three-Stripe Mark. Real Madrid Jersey Trade Dress, and Argentina Jersey Trade Dress are likely to deceive, confuse, and mislead actual and prospective purchasers before, during, and after purchase into believing that the Infringing Apparel is manufactured or authorized by, or in some manner associated with, adidas, which it is not.

69.     The likelihood of confusion, mistake, and deception engendered by HOFSM's misappropriation of adidas's famous Three-Stripe Mark, Real Madrid Jersey Trade Dress, and Argentina Jersey Trade Dress—or HOFSM's offering of goods bearing confusingly similar imitations of adidas's Three-Stripe Mark, Real Madrid Jersey Trade Dress, and Argentina Jersey Trade Dress—is causing irreparable harm to the goodwill symbolized by the Three-Stripe Mark and the reputation for quality that it embodies.

70.     The consumer confusion and misattribution caused by the Infringing Apparel is particularly damaging with respect to those persons who perceive a defect or lack of quality in the

Infringing Apparel. Among other things, HOFSM's marketing and sale of the Infringing Apparel is causing adidas to lose control over adidas's brand, as represented by the Three-Stripe Mark; diverting consumers from adidas; causing consumers to associate adidas's Three-Stripe Mark with a cheaper, lower quality, and/or budget-minded brand; causing consumers to affiliate adidas's Three-Stripe Mark and brand with imagery and/or communications that are different from those adidas wishes to have the consuming public associate with its Three-Stripe Mark; and diminishing the goodwill adidas has built up over numerous decades in the Three-Stripe Mark.

71.    adidas objected to HOFSM's misappropriation of adidas's famous Three-Stripe Mark on or about November 4, 2024 by requesting Amazon take down the infringing pages.

72.    adidas retracted its takedown notice to Amazon, and Amazon reinstated the product listings of the Infringing Apparel based upon representations made in HOFSM's counsel's Response that the Infringing Apparel sold on Amazon "do not infringe on [adidas's] trademark[s]."

73.    On information and belief, HOFSM continues to knowingly, willfully and deliberately use identical, confusingly similar, and/or substantially indistinguishable imitations of adidas's famous Three-Stripe Mark, the Argentina Jersey Trade Dress, and the Real Madrid Jersey Trade Dress in connection with HOFSM's advertising, marketing, and sale of its Infringing Apparel that directly competes with apparel offered by adidas. HOFSM began selling the Infringing Apparel long after adidas had established protectable rights in the Three-Stripe Mark, the Argentina Jersey Trade Dress, and the Real Madrid Jersey Trade Dress, and well after the Three-Stripe Mark became famous among the general public in the United States.

74.    HOFSM has shown a callous disregard for adidas's rights. HOFSM thus has acted in bad faith, with malicious intent, and in knowing disregard of adidas's rights.

## FIRST CLAIM FOR RELIEF
### (Federal Trademark Infringement)

75.    adidas repeats and incorporates by reference the allegations in the preceding paragraphs.

76.    HOFSM's use of confusingly similar imitations of adidas's Three-Stripe Mark is likely to cause confusion, deception, and mistake by creating the false and misleading impression that HOFSM's goods are manufactured or distributed by adidas, or are associated or connected with adidas, or have the sponsorship, endorsement, or approval of adidas.

77.    adidas and HOFSM advertise, market, and sell their respective products through the same or overlapping channels; and HOFSM's uses of stripes described in this Complaint are likely to cause confusion, deception, and mistake among consumers before, at the point of, and after the purchase of HOFSM's products, resulting in initial-interest, point-of-sale, and post-sale confusion.

78.    HOFSM has used marks confusingly similar to adidas's federally registered marks in violation of 15 U.S.C. §§ 1114 and 1125(a). HOFSM's activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public, and, additionally, injury to adidas's goodwill and reputation as symbolized by adidas's Three-Stripe Mark, for which adidas has no adequate remedy at law.

79.    HOFSM's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with adidas's Three-Stripe Mark to adidas's great and irreparable harm.

80.    HOFSM has caused and is likely to continue causing substantial injury to the public and to adidas; therefore, adidas is entitled to injunctive relief and to recover HOFSM's

profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117.

### SECOND CLAIM FOR RELIEF
**(Trademark Counterfeiting)**

81.     adidas repeats and incorporates by reference the allegations in the preceding paragraphs.

82.     HOFSM has used in commerce in the United States spurious marks that are identical with, or substantially indistinguishable from, the Three-Stripe Mark without adidas's authorization, and in connection with the same goods described in adidas's federal registrations for that mark.

83.     HOFSM's unauthorized use of spurious marks on the Infringing Apparel that are identical with, or substantially indistinguishable from, the Three-Stripe Mark falsely represents HOFSM's goods as emanating from or being authorized by adidas and places beyond adidas's control the quality of goods offered and sold under the Three-Stripe Mark.

84.      HOFSM's unauthorized use of spurious marks that are identical with, or substantially indistinguishable from, the Three-Stripe Mark in connection with the promotion and sale and distribution of apparel is likely to cause confusion, mistake, or deception as to the source or sponsorship of HOFSM's goods, and is likely to deceive the public into believing that HOFSM's goods emanate from adidas, are sponsored, endorsed, or approved by adidas, are subject to adidas's quality control measures, or are otherwise associated with adidas.

85.     HOFSM's foregoing conduct has been intentional, reckless, and willful.

86.     As a result of HOFSM's use of spurious marks that are identical with, or substantially indistinguishable from, the Three-Stripe Mark, HOFSM has used counterfeit marks,

38- COMPLAINT

as that term is defined in Section 34(d)(1)(B) of the Lanham Act, and HOFSM is accordingly liable under the anti-counterfeiting provisions of the Lanham Act.

87.     HOFSM is likely to continue causing substantial injury to the public and to adidas, which has no adequate remedy at law, and adidas is entitled to injunctive relief, an accounting of profits, damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117. Additionally, pursuant to 15 U.S.C. § 1117(b), adidas is entitled to trebling of the greater of profits or damages, and to prejudgment interest. Alternatively, pursuant to 15 U.S.C. § 1117(c), adidas is entitled to recover statutory damages for HOFSM's willful use of counterfeit marks.

### THIRD CLAIM FOR RELIEF
### (Federal Unfair Competition)

88.     adidas repeats and incorporates by reference the allegations in the preceding paragraphs.

89.     HOFSM's use of confusingly similar imitations of adidas's Three-Stripe Mark, Argentina Jersey Trade Dress, and Real Madrid Jersey Trade Dress has caused and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that HOFSM's goods are manufactured or distributed by adidas, or are affiliated, connected, or associated with adidas, or have the sponsorship, endorsement, or approval of adidas.

90.     HOFSM has made false representations, false descriptions, and false designations of its goods in violation of 15 U.S.C. § 1125(a). HOFSM's activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public, and, additionally, injury to adidas's goodwill and reputation as symbolized by adidas's Three-Stripe Mark, Argentina Jersey Trade Dress, and Real Madrid Jersey Trade Dress, for which adidas has no adequate remedy at law.

91.     HOFSM's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with adidas's Three-Stripe Mark, Real Madrid Jersey Trade Dress, and Argentina Jersey Trade Dress to the great and irreparable injury of adidas.

92.     HOFSM's conduct has caused, and is likely to continue causing, substantial injury to the public and to adidas. adidas is entitled to injunctive relief and to recover HOFSM's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1125(a), 1116, and 1117.

### FOURTH CLAIM FOR RELIEF
### (Federal Trademark Dilution of the Three-Stripe Mark)

93.     adidas repeats and incorporates by reference the allegations in the preceding paragraphs.

94.     For over sixty-five years, adidas has exclusively and continuously promoted and used its registered Three-Stripe Mark in the United States. The Three-Stripe Mark became a famous and well-known symbol of adidas and its products among the general public in the United States well before HOFSM began promoting, distributing, or offering for sale the Infringing Apparel. Indeed, this Court previously held the Three-Stripe Mark to be "unquestionably famous." *adidas Am., Inc. v. Skechers USA, Inc.*, 149 F. Supp. 3d 1222, 1247 (D. Or. 2016).

95.     HOFSM is making use in commerce of confusingly similar imitations of adidas's famous Three-Stripe Mark that dilute and are likely to dilute the distinctiveness of adidas's famous Three-Stripe Mark by eroding the public's exclusive identification of this famous mark with adidas, tarnishing and degrading the positive associations and prestigious connotations of this famous mark, and otherwise lessening the capacity of the famous Three-Stripe Mark to identify and distinguish adidas's goods.

40- COMPLAINT

96.    HOFSM's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with adidas's Three-Stripe Mark or to cause dilution of the mark to the great and irreparable injury of adidas.

97.    HOFSM has caused and, unless enjoined by this Court, will continue to cause irreparable injury to adidas's goodwill and business reputation, and dilution of the distinctiveness and value of adidas's famous Three-Stripe Mark in violation of 15 U.S.C. § 1125(c). adidas therefore is entitled to injunctive relief and to HOFSM's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1125(c), 1116, and 1117.

## FIFTH CLAIM FOR RELIEF
### (State Trademark Dilution and Injury to Business Reputation)

98.    adidas repeats and incorporates by reference the allegations in the preceding paragraphs.

99.    For over sixty-five years, adidas has exclusively and continuously promoted and used its registered Three-Stripe Mark in the United States. The Three-Stripe Mark became a famous and well-known symbol of adidas and its products among the general public in the United States well before HOFSM began promoting, distributing, or offering for sale the Infringing Apparel.

100.    HOFSM is making use in commerce of confusingly similar imitations of adidas's famous Three-Stripe Mark that dilute and are likely to dilute the distinctiveness of adidas's famous Three-Stripe Mark by eroding the public's exclusive identification of this famous mark with adidas, tarnishing and degrading the positive associations and prestigious connotations of this famous mark, and otherwise lessening the capacity of the famous Three-Stripe Mark to identify and distinguish adidas's goods.

101.    HOFSM's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with adidas's Three-Stripe Mark or to cause dilution of the mark to the great and irreparable injury of adidas.

102.    HOFSM has caused and, unless enjoined by this Court, will continue to cause irreparable injury to adidas's goodwill and business reputation, and dilution of the distinctiveness and value of adidas's famous Three-Stripe Mark in violation of the Oregon antidilution act, ORS § 647.107 (Westlaw through 2024 Sess.), as well as the antidilution laws of several other states, including Alabama, Ala. Code § 8-12-17 (Westlaw through 2024 Sess.); Alaska, AK. Stat. § 45.50.180 (Westlaw through 2024 2d Sess.); Arizona, Ariz. Rev. Stat. Ann. § 44-1448.01 (Westlaw through 2024 2d Sess.); Arkansas, Ark. Code Ann. § 4-71-213 (Westlaw through 2024 2d Ex. Sess.); California, Cal. Bus. & Prof. Code § 14247 (West, Westlaw through 2024 Sess.); Connecticut, Conn. Gen. Stat. § 35-11i(c) (Westlaw through 2024 Reg. and June Sess.); Delaware, Del. Code Ann. tit. 6, § 3313 (Westlaw through 2024 Gen. Assemb.); Florida, Fla. Stat. § 495.151 (Westlaw through 2024 2d Sess.); Georgia, Ga. Code Ann. § 10-1-451 (Westlaw through 2024 Sess.); Hawaii, Haw. Rev. Stat. § 482-32 (Westlaw through 2024 Reg. and 1st Spec. Sess.); Idaho, Idaho Code § 48-513 (Westlaw through 2024 2d Sess.); Illinois, 765 Ill. Comp. Stat. 1036/65 (Westlaw through 2024 Sess.); Indiana, Ind. Code § 24-2-1-13.5 (Westlaw through 2024 2d Sess.); Iowa, Iowa Code § 548.113 (Westlaw through 2024 Sess.); Kansas, Kan. Stat. Ann. § 81-214 (Westlaw through 2024 Reg. and 1st Spec. Sess.); Louisiana, La. Stat. Ann. § 51:223.1 (Westlaw through 2024 1st Ex., 2d Ex., and Reg. Sess.); Maine, Me. Rev. Stat. Ann. tit. 10, § 1530 (Westlaw through 2024 Sec. Sess.); Massachusetts, Mass. Gen. Laws ch. 110H, § 13 (Westlaw through 2024 2d Annual Sess.); Minnesota, Minn. Stat. § 333.285 (Westlaw through 2024 Sess.); Mississippi, Miss. Code Ann. § 75-25-25 (Westlaw through 2024 Reg., 1st,

and 2d Ex. Sess.); Missouri, Mo. Ann. Stat. § 417.061(1) (Westlaw through 2024 2d Sess.);

Montana, Mont. Code Ann. § 30-13-334 (Westlaw through 2023 Sess.); Nebraska, Neb. Rev.

Stat. § 87-140 (Westlaw through 2024 2d Sess. and 1st Spec. Sess.); Nevada, Nev. Rev. Stat. §

600.435 (Westlaw through Reg. and Spec. Sess.); New Hampshire, N.H. Rev. Stat. Ann. § 350-

A:12 (Westlaw through 2024 Sess.); New Jersey, N.J. Stat. Ann. § 56:3-13.20 (Westlaw through

2024); New Mexico, N.M. Stat. Ann. § 57-3B-15 (Westlaw through 2024 2d Sess.); New York,

N.Y. Gen. Bus. Law § 360-l (Westlaw through 2024); Pennsylvania, 54 Pa. Cons. Stat. § 1124

(Westlaw through 2024 Sess.); Rhode Island, 6 R.I. Gen. Laws § 6-2-12 (Westlaw through 2024

Sess.); South Carolina, S.C. Code Ann. § 39-15-1165 (Westlaw through 2024); Tennessee, Tenn.

Code Ann. § 47-25-513 (Westlaw through 2024 Sess.); Texas, Tex. Bus. & Com. Code Ann. §

16.103 (Westlaw through 2023 Reg., 2d, 3d, and 4th Sess.); Utah, Utah Code Ann. § 70-3a-403

(Westlaw through 2024 4th Spec. Sess.); Washington, Wash. Rev. Code § 19.77.160 (Westlaw

through 2024 Sess.); West Virginia, W. Va. Code § 47-2-13 (Westlaw through 2024 Sess.); and

Wyoming, Wyo. Stat. Ann. § 40-1-115 (Westlaw through 2024 Budget Sess.).

103.    adidas, therefore, is entitled to injunctive relief, damages, and costs, as well as, if

appropriate, enhanced damages, punitive damages, and reasonable attorneys' fees.

## SIXTH CLAIM FOR RELIEF
### (Unfair and Deceptive Trade Practice)

104.    adidas repeats and incorporates by reference the allegations in the preceding

paragraphs.

105.    HOFSM has been and is passing off its goods as those of adidas, causing a

likelihood of confusion or misunderstanding as to the source, sponsorship, or approval of

HOFSM's goods, causing a likelihood of confusion as to HOFSM's affiliation, connection, or

association with adidas, and otherwise damaging the public.

43- COMPLAINT

106.    HOFSM's conduct constitutes unfair and deceptive acts or practices in the course of a business, trade, or commerce in violation of the unfair and deceptive trade practices statutes of several states, including California CAL. BUS. & PROF. CODE § 17200, *et seq.* (Westlaw through 2024 Sess.); Colorado, COLO. REV. STAT. ANN. §§ 6-1-101 to 6-1-115 (Westlaw through 2024 Sess.); Delaware, DEL. CODE ANN. tit. 6, §§ 2531 to 2536 (Westlaw through 2024 Sess.); Georgia, GA. CODE ANN. §§ 10-1-370 to 10-1-375 (Westlaw through 2024 Sess.); Hawaii, HAW. REV. STAT. §§ 481A-1 to 481A-5 (Westlaw through 2024 Reg. and 1st Spec. Sess.); Illinois, ILL. COMP. STAT. ANN. ch. 815, 510/1 to 510/7 (Westlaw through 2024 Sess.); Maine, ME. REV. STAT. ANN. tit. 10, §§ 1211 to 1216 (Westlaw through 2024 2d Sess.); Minnesota, MINN. STAT. ANN. § 325D.43 to .48 (Westlaw through 2024 Sess.); Nebraska, NEB. REV. STAT. §§ 87-301 to 87-306 (Westlaw through 2024 2d Sess.); New Mexico, N.M. STAT. ANN. §§ 57-12-1 to 57-12-22 (Westlaw through 2024 2d Sess.); New York, N.Y. GEN. BUS. Law § 349 (Westlaw through 2024 Sess.); Ohio, OHIO REV. CODE ANN. §§ 4165.01 to 4165.04 (Westlaw through 2024 Sess.); and Oklahoma, OKLA. STAT. ANN. tit. 78, §§ 51 to 55 (Westlaw through 2024 2d Sess.).

107.    HOFSM's unauthorized use of confusingly similar imitations of adidas's Three-Stripe Mark, Real Madrid Jersey Trade Dress, and Argentina Jersey Trade Dress has caused and is likely to cause substantial injury to the public and to adidas. adidas, therefore, is entitled to injunctive relief and to recover damages and, if appropriate, punitive damages, costs, and reasonable attorneys' fees.

### SEVENTH CLAIM FOR RELIEF
**(Common Law Trademark and Trade Dress Infringement and Unfair Competition)**

108.    adidas repeats and incorporates by reference the allegations in the preceding paragraphs.

44- COMPLAINT

109.    HOFSM's actions constitute common law trademark infringement and unfair competition, and have created and will continue to create, unless enjoined by this Court, a likelihood of confusion to the irreparable injury of adidas. adidas has no adequate remedy at law for this injury.

110.    On information and belief, HOFSM has acted with full knowledge of adidas's use of, and statutory and common law rights to, adidas's Three-Stripe Mark, Real Madrid Jersey Trade Dress, and Argentina Jersey Trade Dress, and without regard to the likelihood of confusion of the public created by HOFSM's activities.

111.    HOFSM's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with adidas's Three-Stripe Mark, Real Madrid Jersey Trade Dress, and Argentina Jersey Trade Dress, to the great and irreparable injury of adidas.

112.    As a result of HOFSM's actions, adidas has been damaged in an amount not yet determined or ascertainable. At minimum, however, adidas is entitled to injunctive relief, to an accounting of HOFSM's profits, as well as adidas's damages, reasonable attorneys' fees, and costs. Further, in light of HOFSM's deliberate and malicious use of confusingly similar imitations of adidas's Three-Stripe Mark, Real Madrid Jersey Trade Dress, and Argentina Jersey Trade Dress, and the need to deter HOFSM from engaging in similar conduct in the future, adidas additionally is entitled to punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, adidas prays that:

1.    HOFSM and all of its agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or under authority from

Case 3:24-cv-02120     Document 1     Filed 12/20/24     Page 46 of 48


HOFSM, or in concert or participation with HOFSM, and each of them, be enjoined permanently from:

    a.   using the Three-Stripe Mark, Real Madrid Jersey Trade Dress, or Argentina Jersey Trade Dress, or any other copy, reproduction, colorable imitation, or simulation of adidas's Three-Stripe Mark, Real Madrid Jersey Trade Dress, or Argentina Jersey Trade Dress on or in connection with HOFSM's goods or services;

    b.   passing off, palming off, or assisting in passing off or palming off HOFSM's goods as those of adidas, or otherwise continuing any and all acts of unfair competition as alleged in this Complaint; and

    c.   advertising, promoting, offering for sale, or selling the Infringing Apparel or other goods bearing designs that are substantially indistinguishable from, or confusingly similar to, adidas's Three-Stripe Mark, Real Madrid Jersey Trade Dress, or Argentina Jersey Trade Dress;

2.    HOFSM be ordered to cease offering for sale, marketing, promoting, and selling and to recall all products sold under or bearing any identical, confusingly similar, or substantially indistinguishable imitations of adidas's Three-Stripe Mark, Real Madrid Jersey Trade Dress, or Argentina Jersey Trade Dress that are in HOFSM's possession, custody, or control, or have been shipped by HOFSM or under its authority, or would violate Paragraph 1 above, to any customer, including but not limited to, any wholesaler, distributor, retailer, consignor, or marketer, and also to deliver to each such store or customer a copy of this Court's order as it relates to said injunctive relief against HOFSM;

46- COMPLAINT

3.      HOFSM be ordered to deliver up for impoundment and for destruction, all apparel, signs, advertising, sample books, promotional materials, or other materials in the possession, custody, or control of HOFSM that are found to adopt, infringe, or dilute adidas's Three-Stripe Mark, Real Madrid Jersey Trade Dress, or Argentina Jersey Trade Dress, or that otherwise unfairly compete with adidas and its products;

4.      HOFSM be compelled to account to adidas for any and all profits derived by HOFSM from the sale or distribution of the Infringing Apparel;

5.      adidas be awarded all actual and statutory damages caused by or attributable to the acts forming the basis of this Complaint;

6.      Based on HOFSM's knowing and intentional use of counterfeit, confusingly similar, and substantially indistinguishable imitations of adidas's Three-Stripe Mark, the damages awarded be trebled and the award of HOFSM's profits be enhanced as provided for by 15 U.S.C. § 1117(a) and (b), or alternatively, and at adidas's election, pursuant to 15 U.S.C. § 1117(c), for any goods bearing a counterfeit mark, adidas be awarded statutory damages for HOFSM's willful use of a counterfeit mark;

7.      HOFSM be ordered to disclose to adidas the identities of all manufacturers, suppliers, and sources of the Infringing Apparel, of designs for the Infringing Apparel, and of materials used to construct the Infringing Apparel, and Defendant be ordered to provide to adidas all documents, including without limitation all correspondence, receipts, purchase orders, and invoices, associated with the purchase of the Infringing Apparel;

8.      HOFSM be required to pay adidas the costs of this action and adidas's reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a) and applicable state statutes and common law;

47- COMPLAINT

9.    Based on HOFSM's willful and deliberate infringement, dilution, and unfair competition, and to deter such conduct in the future, adidas be awarded punitive damages;

10.    adidas be awarded prejudgment and post-judgment interest on all monetary awards; and

11.    adidas have such other and further relief as this Court may deem just or proper.

## JURY TRIAL DEMAND

adidas respectfully demands a trial by jury on all claims and issues so triable.

DATED this 20th day of December, 2024.

BUCHALTER
A Professional Corporation


/s/ Daniel P. Larsen
Daniel P. Larsen, OSB No. 943645
dlarsen@buchalter.com
805 SW Broadway, Suite 1500
Portland, OR 97205
Telephone: 503.226.1191

R. Charles Henn Jr. (*pro hac vice* to be filed)
chenn@ktslaw.com
Charles H. Hooker III (*pro hac vice* to be filed)
chooker@ktslaw.com
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309
Telephone: 404.815.6500

Attorneys for Plaintiffs

48- COMPLAINT